UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNA COLBERT,<br><br>　　　　Plaintiff,<br>-vs-<br><br>NATIONAL CREDIT SYSTEMS, INC.,<br><br>　　　　Defendant. | Case No.: 1:21-cv-02079<br>Hon. John Robert Blakey<br>Mag. Judge Susan E. Cox<br><br>**JURY DEMAND** |

## NATIONAL CREDIT SYSTEMS, INC.'S FED. R. CIV. PROC. 12(B)(1) & (B)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AT ECF 15

Pursuant to Fed. R. Civ. P. 12(b)(1) & (b)(6), Defendant, National Credit Systems, Inc. ("NCS"), respectfully moves this Court for entry of judgment in its favor on all the claims pled by Plaintiff, Anna Colbert ("Plaintiff"). Defendant requests that any future requests for leave to amend be denied, as the Plaintiff's woefully deficient Amended Complaint falls far beneath the standards set forth in *Iqbal*[1] and *Twombley*[2], *infra*, it is crystal clear that, upon its face, the Plaintiff is incapable of *any* amendment that would not be stricken for futility grounds alone. For all the reasons stated in the attached Memorandum of Law, there is no genuine issue of material fact; therefore judgment is proper in NCS's favor.

Respectfully submitted,

DATED: 8/13/2021

*/s/ Katrina M. DeMarte*
KATRINA M. DEMARTE (MI bar No. P81476; CO Bar No. 43135)
**DEMARTE LAW, PLLC**
Attorney for National Credit Systems, Inc.
39555 Orchard Hill Place Suite 600

---

[1,2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (hallmark opinions setting forth pleading standards in federal court).

PMB 6338
Novi, MI 48375
Telephone: (313) 509-7047
katrina@demartelaw.com
*Counsel for Defendant,*
*National Credit Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I, Katrina M. DeMarte, hereby certify that on August 16, 2021, I served the aforementioned document via CM/ECF, to all attorneys of record.

*/s/ Katrina M. DeMarte*
Katrina M. DeMarte
(MI Bar No. P81476; CO Bar No: 43135)
**DEMARTE LAW**

**STATEMENT OF FACTS**

Defendant National Credit Systems, Inc. ("NCS") by and through counsel, Katrina DeMarte, of DeMarte Law, PLLC, hereby move this Court to dismiss all claims alleged against the Defendants pursuant to Fed. R. Civ. P. 12 (b)(1) & (b)(6), and Defendant incorporates the attached brief and state in support thereof as follows:

1) This action arises from the placement of one of Plaintiff's accounts with NCS for collections. *See* ECF 15, ¶¶ 7, 11.

2) The Plaintiff claims that the amounts owed were incurred as "an obligation to pay money, the primary purpose of which was for personal, family, or household uses" – however, in doing so, she does not identify the name of the underlying creditor, or any of the most common, very basic, requisite facts surrounding the account such as the balance, or type of account. *See* ECF 1, ¶ 7.

3) The Plaintiff alleges that NCS made various communication overtures from the time that her account was placed with it, through the time that this lawsuit was ultimately filed. *See* ECF 15, ¶¶ 12-18.

4) More specifically, the Plaintiff places from and center "communications" and "privacy" concerns with her Complaint. *See* ECF 15. More specifically, with her Complaint, the Plaintiff concurrently requested that NCS: a) more information; *and* b) cease contact with her for an unlimited and unspecified period of time – presumably indefinitely. *See* ECF 15, ¶¶ 7, 11; *see also* ECF 15-3.

5) However, a brief review of the limited correspondence attached to the Complaint at ECF 15 paints a broader picture of the factual predicate underlying this lawsuit, which provides *some* context to the Plaintiff's threadbare assertions. ECF 15-1; 15-2; 15-3; 15-4.

6) If NCS does not meet these demands, the Plaintiff threatened to "file a complaint with the Federal Trade Commission and the IL Attorney's (sic) General Office if you fail to comply with this request. There will be criminal and civil claims." ECF 15-3.

7) NCS sent its initial demand letter to the Plaintiff on March 5, 2021. ECF 15-2. Plaintiff responded to NCS's initial communication disputing the amount sought by the original creditor. ECF 15-3. Though the Plaintiff's email to her attorney attempts to state that it was sent on April 2, 2021, the caption of the email, instead, states that the email was from Saturday, April 10, 2021. ECF 15-3.

8) As such, when using either the April 2 or April 10 date as an anchor, when the Plaintiff filed this case on April 16, 2021, she left *approximately two weeks or less* for NCS to respond to her demands – one of which included criminal prosecution. *Id*.

9) Moreover, the Plaintiff claims to have sent in a Cease & Desist request for the dual purpose of demanding that NCS cease contacting her and also notate her consumer report as "disputed". ECF 15-3.

10) Plaintiff also alleges that NCS has "shared information regarding this debt to this "Dept 855…" without the Plaintiff's permission," and that based upon the Plaintiff's "information and belief", "Dept 855" is not affiliated with NCS, they have seen all information available to NCS regarding the Plaintiff, and NCS has done so all without the Plaintiff's explicit permission. *See* ECF 15, ¶¶ 21-24.

11) With respect to NCS, the Plaintiff has stated that receiving phone calls and voicemails was "annoying", and that these unspecified "people" who were given information about her "personal financial situation" (for which she has not provided any factual detail of any sort whatsoever) – is not sufficient to confer Article III

standing. *See* ECF 15, PG ID 44.

12) As a result of the foregoing scantly-pled allegations, the Plaintiff has been utterly incapable of setting forth the required pleading standards and burden which she carries regarding Article III and standing.

13) Because the Plaintiff does not allege and is incurably incapable of setting forth a sufficient injury-in-fact to sustain Article III standing under *Spokeo* or *Ramirez*, as set forth more specifically, *supra*, this case should be dismissed for lack of jurisdiction.

## STANDARD OF REVIEW

### (a) Motions to Dismiss

A party may file a Motion to Dismiss a claim for "lack of subject matter jurisdiction" or for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), 12(b)(6), 8(a). Plaintiff's Complaint contains no factual or legal basis which would entitle Plaintiff to relief under any legal theory. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

When considering a motion to dismiss, the United States Supreme Court instructed lower courts to consider "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court is not required to accept, as true, legal conclusions couched as factual allegations. *Id*. Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id;* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. Proc. 12(b)(6). "But where the well-pleaded facts do not merit the court to infer more than the mere possibility of misconduct, the complaint…has not 'show[n]'…'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Proc. 8(a)(2)).

Specifically, the pleadings must consist of more than a "formulaic recitation of the elements of a cause of action or naked assertion devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal citations omitted). Legal conclusions couched as factual allegations are insufficient, as are conclusory factual allegations devoid of any reference to actual events. *Ashcroft v. Iqbal*, 556 U.S. at 678. To prevent dismissal, a

complaint must contain "sufficient factual matter," accepted as true, to show that the claim is facially plausible and to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Finally, "dismissal is nevertheless appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockton v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotations omitted).

The Court should accept as true all factual allegations contained in the complaint and determine whether the plaintiff can prove a set of facts in support of her claims that would entitle her to relief. *In re: DeLorean Motor Co.,* 991 F.2d 1236 (6th Cir. 1993). The Court should not accept as true, however, unwarranted factual inferences. *Morgan v. Church 's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Similarly, the Court should not accept as true any legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947, 950 (6th Cir. 1990).

In reviewing the dismissal of a complaint under Rule 12(b)(6), the court "may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Although the Court must review the facts in the light most favorable to the Plaintiff, it is not required to accept as true unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. Thus, a pleading that merely offers labels or conclusions, or a formulaic recitation of the elements of a cause of action, is insufficient to state a plausible claim for relief.

**b. Article III Standing**

As an initial matter, lawsuits must be brought and maintained by the appropriate parties who have standing to sue in federal court – meaning those who have an actual case or controversy. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. \_\_\_, 136 S. Ct. 1540, 1547 (2016)). "The [standing] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo v. Robins*, 136 S.Ct. 1540, 2016 WL 2842447 at *5 (2016).

In order to have standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. 861. Plaintiff carries the burden of establishing those three elements with facts demonstrating each element. *Buchholz*, 946 F.3d at 861. As the Court emphasized in *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *8 (U.S. S. Ct. June 25, 2021).

"Injury-in-fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S.Ct. at 1547-48 (internal quotations and alterations omitted). The existence of a federal "cause of action does not affect the Article III standing analysis." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020). Rather, "Article III requires a concrete injury even in the context of a statutory violation." *Id.* at 1620-21, quoting *Spokeo*, 136 S.Ct. at 1549.

"A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quotations omitted). It is not enough for the alleged violations to simply be <u>capable</u> of causing injury; rather, the conduct which the Plaintiff challenges must go

beyond conjecture or speculation – it must actually injure a plaintiff for Article III standing to be present and properly supported in the record. *Frank v. Autovest, LLC*, 961 F.3d 1185, 1189 (D.C. Cir. 2020). Not every violation causes an injury-in-fact sufficient to confer Article III standing. *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (holding there is no Article III standing where there were merely conclusory allegations regarding misleading and unfair representations); *see also .Daniels v. Aldridge Pite Haan, LLP*, 2020 WL 3866649, at *4 (M.D. Ga. July 8, 2020) (dismissing complaint for lack of standing because the plaintiff's "amorphous and generic claims of harm are precisely the kind of "bare allegation of a statutory violation" that fails to meet the concreteness requirement of injury in fact."); *Wright v. AR Resources, Inc.*, 2020 WL 7047804 at *3 (M.D. Fla. Dec. 1, 2020) (holding Plaintiff did not have standing when harm is "inferred" or "hypothetical"); *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 954 (11th Cir. 2020) (conjectural harms such as confusion over a collection letter, without more, is "insufficient to confer standing.").[3]

In the landmark opinion issued just last month, the United States Supreme Court clarified the Article III Standing requirements by partially <u>reversing</u> certification on a class action where there was not a concrete injury. *Id*. Specifically, in *Ramirez*, the Defendant (Trans Union) maintained a database of consumers for public access, which had, somehow, been updated with incorrect and defamatory information – naming the class members as *potential* terrorists, drug traffickers, or serious criminals. Of that database, approximately 1/3 of the consumer's had their information sent out into the public

---

[3] The Complaint makes no reference to damages whatsoever, except with reference annoyance regarding phone calls and voicemails. *See* ECF 1; *see also* Statement of Facts, ⁋ 11.

domain, whilst the remaining 2/3's was never publicly disseminated. The court concluded the publicly disseminated 1/3 "members therefore suffered a harm with a "close relationship" to the harm associated with the tort of defamation." *Id.* In analyzing the remaining class members – the ones who did not have information publicly disseminated, that was a greater task, with the court finding the following:

> The remaining 6,332 class members are a different story. To be sure, their credit files, which were maintained by TransUnion, contained misleading OFAC alerts. But the parties stipulated that TransUnion did not provide those plaintiffs' credit information to any potential creditors during the class period from January 2011 to July 2011. Given the absence of dissemination, we must determine whether the 6,332 class members suffered some other concrete harm for purposes of Article III.
>
> The initial question is whether the mere existence of a misleading OFAC alert in a consumer's internal credit file at TransUnion constitutes a concrete injury. As Judge Tatel phrased it in a similar context, "if inaccurate information falls into" a consumer's credit file, "does it make a sound?".

*TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *11 (U.S. S. Ct. June 25, 2021) (internal citations omitted).

Plaintiff lacks standing because they have not suffered any injury-in-fact. They do not allege actual harm in the "flesh-and-blood or dollars-and-cents" sense of the terms. *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 463 (6th Cir. 2019). Furthermore, to the extent that the Plaintiffs could allege damages, their damages are not attributable to NCS – they are attributed to themselves, or potentially other third parties, such as the entity that the Plaintiffs entered into the lease with, and not NCS. *Garland v. Orlans PC*, No. 18-11561, 2020 WL 2542036, at *7 (E.D. Mich. May 19, 2020), aff'd on other grounds, 999 F.3d 432 (6th Cir. 2021) (finding that a "state of confusion" is not an injury, and bare allegations of anxiety are not concrete injuries where future harm is not impending where harm is not traceable to Defendant); *see also Shepherd v. Debt Recovery*

*Sols. of Ohio, Inc.*, No. 3:20-CV-520, 2021 WL 1578073, at *2 (N.D. Ohio Apr. 22, 2021) (holding that fear of future harm without imminency is not sufficient to establish concrete injury to confer Article III standing).

In bringing her claims against NCS, Plaintiff amended her Complaint at ECF 15 to, suddenly, discovery that she believed her privacy had been breached (having not realized that at the time of filing). However, her Amended Complaint does very little to give any reader the "Who, What, Why, When, Where, etc." that would satiate anyone's appetite for knowledge or information. In fact, it is noticeably void to the extent that NCS and its counsel cannot make out a claim or understanding of what her purported damages are in this matter. Recently, the Eastern District of New York combined and consolidated several "*Hunstein*" cases (which was the primary focus of the Plaintiff's Amended Complaint), and in doing so, they addressed the standing component concurrently. Several relevant passages are included below and are instructive.

> First, in [*Ramirez*], the Supreme Court held that the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."
>
> ***
>
> [The credit bureau] emphasizes that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." (rejecting "mere speculative apprehension of future misuse of information" as grounds for standing). Even to consider the risk of future harm, the Supreme Court found that the plaintiffs had to demonstrate that "their individual credit information would be requested by third-party businesses and provided by TransUnion during the relevant time period … [or] that there was a sufficient likelihood that TransUnion would otherwise intentionally or accidentally release their information to third parties."
>
> Here, counsel repeatedly invokes the specter of potential future release of information by the mailing vendor. ("[T]he debtor may well be harmed by the spread of this information.") . . . Such speculative claims of potenti

future harm cannot support plaintiffs' claim of Article III standing. ("The shivering here was self-induced").

\*\*\*

"Similarly, it would be difficult to suggest, using the "invasion of privacy" analysis adopted in *Hunstein*, that communication of purported non-payment of a relatively *de minimis* debt to a mailing vendor constitutes a **"matter publicized ... of a kind that ... would be highly offensive to a reasonable person.""**

*In re FDCPA Mailing Vendor Cases*, No. CV 21-2312, 2021 WL 3160794, at \*6 (E.D.N.Y. July 23, 2021) (emphasis in original) (internal citations omitted; some internal brackets omitted).

The Plaintiff has not made any allegations (and she is utterly incapable of amending to meet this deficiency) that she has been damaged as a result of any conduct by NCS, as opposed to any of the actions of any her own actions or inactions, or that of a third party[4]. Plaintiff claims that she received communications from NCS are not supported by the documents, evidence, and allegations in the record. Plaintiff's allegations that NCS did not notate her account as "disputed" – a mere two weeks after she claims to have sent such a dispute, is not only something which she has no documentation regarding (as the "report" attached to the Complaint is not a consumer report), but the allegations in the Complaint regarding standing and damages do not support any already-existing concrete injury. Moreover, given the threadbare, bare-bones, document, it is unclear if they could ever

---

[4]Plaintiff claims that NCS "communicated" with third parties – without providing any further context *whatsoever*. However, only certain communications are barred pursuant to 15 U.S.C. 1692(c)(b), and communications with third parties are not barred if they are not specifically seeking to collect a debt. Here, if using the fact pattern of *Hunstein,* it is clear that NCS was not communicating with *anyone* in connection with the attempt to collect a debt, where it was not seeking recoupment of any amounts or any information from anyone else, and therefore, if any information was exchanged, it certainly was not a communication as defined by the FDCPA. *See also Grden v. Leikin Ingber & Winters, PC*, 643 F.3d 169, 173 (6th Cir. 2015).

support a potential, future injury, though that appears to be entirely unlikely given the *Ramirez* opinion, insofar as it forecloses upon Plaintiff's claims regarding her purported alleged failure by NCS to notate a "dispute", which rings hollow where a Plaintiff cannot prove an actual, already existing, concrete injury – which the Plaintiff is incurably incapable of doing in this matter.

Certainly, the Plaintiff has not alleged that she was misled in any way, shape, or form. She has not made sufficient allegations regarding *when* NCS would have received her letter, and when she was supposedly receiving communications from NCS in comparison to the same. As such, Plaintiff cannot prove causation, either. Simply put, Plaintiff's purported claims in this matter are woefully deficient, and they have never materialized – meaning, Plaintiff has never had to suffer any consequences from the allegations she complains of, and in fact, counsel for NCS is incapable of even articulating any potential future harm that could come from any of NCS's future actions or inactions at the hands of NCS's letters.

Not only did the Plaintiff *agree* to pay all of these amounts – i.e., she is the creator of her own circumstances – she *hasn't* alleged that she has paid these amounts or been harmed in any material way – i.e., even if there were to be a violation of the law, which the Defendants vehemently contest and deny, the Plaintiff has not suffered any injury sufficient to confer Article III standing. This is hardly enough to construct a federal lawsuit under the Fair Debt Collection Practices Act, let alone to meet the stringent standards of *Iqbal* and *Twombly*. As discussed more, *infra*, Plaintiff's claims are wholly meritless, and no amendment will cure her hollow claims, and as such, Plaintiff's claims should be dismissed for all of the many reasons that follow.

However, applying the above principles to the allegations of Plaintiff's Complaint, it is clear that even under the least-sophisticated-consumer standard, there is no violation in NCS's letters or conduct as alleged – a company that was given a mere two weeks to comply or face a civil or criminal proceeding at the hands of the Plaintiff (and, who, in fact _did_ respond and mark the account as disputed once it was received – though that is outside of the scope of such a motion like this). *See* Statement of Facts, #7-11. Instead, Plaintiff is simply using the FDCPA to dispute her past-due accounts in the hopes of clearing up her credit, pressuring scrupulous businesses to pay-and-delete, and, by the appearance of it, try to make a quick buck. If it were to be any other scenario – the undersigned counsel certainly believes she would have been able to have picked out a source of confusion or false statement, and this brief would not have been necessary. Unfortunately, it was.

Here, where the Plaintiff is in a scenario of her own creation, and where she has not clearly identified any source of concrete injury any confusion or false statements – simply her own frustration at a situation of her own creation. As such, Plaintiff could not have been confused, mislead, or made party to false statements because of any actions of the Defendant, nor has Plaintiff specified any such statements or confusion.

Moreover, "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Id.* (quoting 5 Wright & Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)).

Here, the Complaint fails as a matter of law, and cannot be read to state a cause of action against NCS. When a party's allegations, "however true, could not raise a claim of entitlement to relief," then "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S.

at 558. Accordingly, Plaintiff's Complaint fails to satisfy Rule 12(b)(6) and must be dismissed.

## Conclusion

As such, for all of the many reasons stated above, National Credit Systems, Inc., requests that all claims against it must be dismissed with prejudice, without leave to re-plead, as the deficiencies noted are fatally incurable, and for any other relief that this Honorable Court might find just and appropriate.

Dated: August 13, 2021        Respectfully Submitted,

/s/ Katrina M. DeMarte
Katrina M. DeMarte (MI Bar No. P81476; CO Bar No. 43135)
**DEMARTE LAW, PLLC**
39555 Orchard Hill Place; PMB 6338
Novi, MI 48375
Tel. 313-509-7047
katrina@demartelaw.com

## Certificate of Service

I certify that the foregoing has been served by the Court's CM/ECF service to all counsel of record on August 13, 2021.

/s/Katrina DeMarte
Katrina DeMarte