## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANNA COLBERT,

      Plaintiff,

      v.

NATIONAL CREDIT SYSTEMS, INC.,

      Defendant.

Case No. 1:21-cv-02079

Judge John Robert Blakey

### MEMORANDUM OPINION AND ORDER

Plaintiff Anna Colbert sues Defendant National Credit Systems, Inc, a debt-collector, for alleged violations of the Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C. §§ 1692 et seq. [22].

Defendant now moves to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff failed to establish Article III standing for her § 1692c(b) and § 1692e(8) claims, and that the complaint's threadbare allegations fail to meet the Rule 8(a) pleading standard for any of her claims [23].

In response, Plaintiff makes no argument or even reference to her 15 U.S.C. 1692e claim for alleged "misleading communications to Plaintiff." [24]. Because she fails to address it, and because the complaint provides not details about what communications were allegedly "misleading," Plaintiff has abandoned this claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (finding that a "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)

1

("Failure to respond to an argument" made in a motion to dismiss "results in waiver"). That leaves two claims: (1) § 1692c(b) violation for sharing Plaintiff's debt information with Dept. 855 without her consent; and (2) § 1692e(8) violation for allegedly reporting a debt to one or more credit bureaus without indicating that Plaintiff had disputed it.

For the reasons explained below, the Court grants Defendant's motion [23].

## I.    Factual Allegations

On March 10th, 2021, Plaintiff received a debt collection letter (commonly referred to as a "Dunning Letter") from Defendant, which notified Plaintiff that it had taken over collection on a $ 5,742.11 debt that she allegedly owed; asked her to contact it to satisfy the debt; and informed her that it "may furnish information concerning" the debt to credit bureaus in thirty days.  [22] ¶¶ 15, 16; [15-2] (Ex. A).[1] The upper-left hand corner of the letter showed that it originated from a mailing house located in California named "Dept. 855."  [22] ¶ 20; [15-2] (Ex. A).

On April 2nd, 2021, Plaintiff sent a letter to Defendant "disputing the debt, requesting more information and to stop communicating with her about the debt." [22] ¶ 17; [15-3] (Exs. B, C).  Then, two weeks later, on April 16, 2021, Plaintiff filed this suit against Defendant for violations of the FDCPA, [1], later amending her

---

[1] Plaintiff's first and second amended complaints cite to Exhibits A–D in support of her factual allegations, *see* [15], [22], but only the first amended complaint attaches the exhibits, *see* [15-1]–[15-4]. Because the second amended complaint [22] relies on these exhibits and incorporates them by reference, and because both parties rely upon them in arguing the motion to dismiss, *see* [23], [24] at 4, the Court may properly consider the attached exhibits in deciding Defendant's motion to dismiss the second amended complaint, *see Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (holding that, on a motion to dismiss, a court may consider "the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." (internal citations omitted)).

complaint twice to revise her claims, [15], [22].  In the operative second amended complaint, she alleges that Defendant violated: (1) § 1692c(b) of the FDCPA when it shared Plaintiff's debt information with the mailing house, Dept. 855, without her consent; (2) § 1692e(8) of the FDCPA because it allegedly reported her debt to one or more credit bureaus without indicating that she had disputed it; and (3) § 1692e of the FDCPA for "sending a misleading communication to Plaintiff."  [22] ¶¶ 38–40.[2]

## II.    Legal Standards

A motion to dismiss pursuant to Rule 12(b)(1) challenges the jurisdictional basis for claims, either on the face of the complaint, or by presenting facts that call into question whether standing exists.  *See Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).  In evaluating facial challenges, a court accepts as true all well-pled factual allegations and draws all reasonable inferences in favor of the plaintiff.  *Id*.  For factual challenges, however, if the movant presents evidence that calls into question a court's jurisdiction, then the "presumption of correctness that we accord to a complaint's allegations falls away," and the plaintiff bears the burden to present evidence of standing.  *Id*. (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).

---

[2] The Complaint's "Standing" section also states that "Plaintiff exercised her rights under 15 U.S.C. Section 1692c(c)" and "by calling her and leaving voice messages, Defendant has violated Plaintiff's right to privacy." [22] ¶ 32.  Section 1692c(c) limits a debt collector's ability to communicate with a consumer who refuses to pay or who notifies the debt collector to cease communication.  *See* 15 U.S.C. § 1692c(c).  The Complaint does not, however, allege a violation of § 1692c(c), *see* [22] ¶¶ 37–40 (making no reference to § 1692c(c) in its "Violations of the FDCAP" section); nor does it include any factual allegations regarding when Defendant may have called and left voicemails about the debt.  Further, this reference to § 1692c(c) appears in each of Plaintiff's amended complaints, *see* [1], [15], [22], yet Plaintiff did not mention it in her response to Defendant's prior or current motion to dismiss, [16], [23].

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). To be facially plausible, the complaint must include enough factual allegations for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III. Analysis

### A. Standing for 15 U.S.C. § 1692c(b) Claim Regarding Dept. 855

Section 1692c(b) of the FDCPA states that, absent prior consent from the consumer, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collection." Here, Plaintiff alleges that, on information and belief, Dept. 855 is a third-party mailing house unaffiliated with Defendant and, thus, Defendant violated § 1692c(b) when it shared Plaintiff's debt information with Dept. 855 without Plaintiff's consent. [20] ¶¶ 20–25. Defendant moves to dismiss, arguing that such allegations suggest, at most, a bare statutory violation and Plaintiff cannot show an injury for purposes of Article III standing. [22].

Article III of the U.S. Constitution limits a federal court's subject matter jurisdiction to "cases" and "controversies." U.S. CONST. ART. III; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the case or controversy requirement, a plaintiff bears the burden to establish: "(1) injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61).

The Seventh Circuit has repeatedly held that an FDCPA violation "does not necessarily cause an injury in fact" sufficient to confer standing. *Markakos v. Mericredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021); *see also Wadsworth v. Kross, Liberman, & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021) (finding no injury in fact under FDCPA where defendant failed to comply with the statutory five-day written notice requirement and failed to identify itself as a debt collector). Instead, a Plaintiff must also establish that the FDCPA violation caused "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted).

Tangible harms such as physical or monetary harm may qualify as concrete, but "various intangible harms can also be concrete" depending upon the circumstances of the violation, including "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). The Supreme Court instructs that, in "determining whether an intangible harm constitutes injury in fact," courts should "consider whether an alleged intangible harm has a close relationship that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.

Here, to show standing, the complaint cites to an Eleventh Circuit case, *Hunstein v. Preferred Collection & Management Services, Inc.*, 994 F.3d 1341 (11th

Cir. 2021) ("*Hunstein I*").  *See* [22] ¶ 2.  In *Hunstein I*, the Eleventh Circuit held that a plaintiff sufficiently pled standing for a § 1692c(b) claim where he alleged the defendant invaded his privacy by sharing his medical debt information with a mailing house, because the mailing house was a third party.  994 F.3d at 1347.  The court analogized the privacy harm to a tort for public disclosure of private facts, which creates liability where the unauthorized disclosure of information: "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  *Id.* (citing Restatement (Second) of Torts § 652D).  It reasoned that even though § 1692b(c) "isn't identical in all respects to the invasion-of-privacy tort, we have no difficult concluding it bears a 'close relationship'" to this traditional basis for liability.  *Id.* (citing *Spokeo*, 578 U.S. at 341).

Myriad issues exist with Plaintiff's reliance upon *Hunstein I*.  First, although the complaint cites *Hunstein I*, Plaintiff does not allege any invasion of privacy (or any other harm) tied to Defendant's alleged communications with Dept. 855 about her debt.  Instead, the complaint makes only one reference to privacy where it alleges that Defendant called her and left her messages about the debt and by "calling her and leaving voice messages, Defendant has violated Plaintiff's right to privacy."  [22] ¶ 32.  Such actions, even if true, do not relate to Defendant's alleged communications with Dept. 855.

Second, and most detrimental to Plaintiff's argument, the Eleventh Circuit has since vacated *Hunstein I* in a series of decisions that show that Plaintiff has not and

6

cannot establish Article III standing for her § 1692c(b) claim. The reason, however, warrants further discussion.

Following the *Hunstein I* decision, federal courts saw an influx of cases by consumers alleging § 1692c(b) violations against debt collectors for giving consumers' debt information to third-party mailing houses to prepare and send Dunning Letters (hereinafter, "Dunning Letter cases"). *See, e.g., In re FDCPA Mailing Vendor Cases*, 21-CV-2312, 2021 WL 3160794, at *1 (E.D.N.Y. July 23, 2021); *Liu v. Radius Global Sols., LLC*, 21-CV-2895, 2021 WL 4167585, at *2 (N.D. Ill. Sept. 14, 2021); *Keller v. Northstar Location Servcs.*, 21-CV-3389, 2021 WL 3709183 (N.D. Ill. Aug. 20, 2021); *Liu v. MRS BPO, LLC*, 21-CV-2919, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Stewart v. Healthcare Revenue Recovery Grp., LLC*, 20-cv-679, 2022 WL 200371 (M.D. Tenn. Jan. 21, 2022). When Plaintiff filed this suit in 2021, some of these Dunning Letter cases, including ones in this district, had found Article III standing based upon *Hunstein I*'s reasoning. *See, e.g., Liu*, 2021 WL 416785, at *2; *Keller*, 2021 WL 3709183, at *2 (same).

After Plaintiff filed her initial complaint, however, the Supreme Court issued its opinion in *TransUnion*. 141 S. Ct. at 2190. In *TransUnion*—which involved claims under the Fair Credit Reporting Act ("FCRA")—consumers alleged that TransUnion added alerts to the consumers' credit reports that inaccurately identified them as potential terrorists, drug traffickers, or serious criminals. *Id.* at 2200–01. The consumers alleged that such reporting violated the FCRA "for failing to use reasonable procedures to ensure the accuracy of [the plaintiffs'] credit files." *Id.* at

2200. For those consumers whose TransUnion credit reports were disseminated to third-party businesses, the Supreme Court found Article III standing because the consumers suffered a concrete injury that bore a "close relationship" to the harm associated with a defamation tort. *Id*. at 2208–09. For the consumers whose TransUnion credit reports had not been disseminated to third parties, however, the Court found no Article III standing because the "mere presence of an inaccuracy in" TransUnion's "internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id*. at 2210.

Of note for Plaintiff's claim here, the second group of consumers also argued that they suffered a concrete injury because "TransUnion 'published' the class members' information" to "employees within TransUnion" and "*to the vendors that printed and sent the mailings that the class members received*." *Id*. at 2210 n.6 (emphasis added). The Court held that the group had forfeited this alternative argument by failing to timely raise it but, in dicta, also considered the theory "unavailing" because "American courts did not traditionally recognize intra-company disclosures as actionable publications for purposes of the tort of defamation. Nor have they necessarily recognized *disclosures to printing vendors as actionable publications*." *Id*. (emphasis added) (internal citations omitted).

The *TransUnion* claims fell under the FCRA, not the FDCPA; and the Court's standing findings analogized the harm to the tort of defamation, not invasion of privacy. Nonetheless, based in part on the *TransUnion* ruling, the Eleventh Circuit vacated *Hunstein I* and issued a superseding opinion. *See Hunstein v. Preferred*

*Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103, 1016 (11th Cir. 2021) ("*Hunstein II*"). Yet, the majority in *Hunstein II* again found that the plaintiff established standing by analogy to a tort for public disclosure of private information. It reasoned that the defendant allegedly disclosed sensitive information—including debt and medical information—to the third-party mailing house and, although this "might have been less widespread—less public—than the disclosures typical of actionable public-disclosure-of-private-facts claims," that constitutes just "a matter of 'degree.'" *Id.* at 1027–28.

Then, however, the Eleventh Circuit also vacated *Hunstein II* and granted rehearing en banc. 17 F.4th 1103 (11th Cir. 2021). In its en banc decision, it found that disclosing debt information to a mailing-house does not establish a concrete injury sufficient to establish Article III standing. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1236 (11th Cir. 2022) ("*Hunstein III*"). In this final decision, it reasoned that sharing debt information with a mailing house does not constitute an act akin to a tort for public disclosure of private facts because such sharing "lacks the fundamental element of publicity" and, "without publicity, there is no invasion of privacy—which means no harm, at least not one that is at all similar to that suffered after a public disclosure." *Id.* at 1245. It emphasized that publicity does not include just "*any* communication by the defendant to a third person"; instead, it "is a qualitative inquiry, not a quantitative one" that must turn on the "*effect* of a disclosure." *Id.* at 1246–47 (emphasis in original). In other words, "rather than play a numbers game," a court must "ask whether the disclosed information 'reaches, or is

sure to reach, the public.'" *Id.* (emphasis in original) (quoting Restatement (Second) of Torts § 652D cmt. a). It held that the plaintiff failed to offer any explanation that the disclosure to the mailing-house had or would reach the public. Instead, plaintiff only alleged that the mailing house used the information to populate a letter template, and then print and mail the letter to the plaintiff.

The Court agrees with *Hunstein III*'s reasoning, particularly in light of the Supreme Court's dicta in *TransUnion*. Here, Plaintiff does not plausibly allege that Defendant "publicly communicated" Plaintiff's debt information to Dept. 855, as that term is defined for privacy torts. Instead, at the very most, she alleges that Defendant privately transferred the information to Dept. 855 so that Dept. 855 could enter it into a standard letter that it printed and mailed to Plaintiff. Neither Plaintiff's Second Amended Complaint nor her response to Defendant's motion suggest how this communication to Dept. 855 reached, or is sure to reach, the public. Just as a claim without dissemination does not bear a "close relationship" to defamation, *see TransUnion*, 41. S. Ct. at 2210), a claim without "publicity" does not bear a "close relationship" to the tort of public disclosure of private information.

Further, although the Seventh Circuit has not addressed this standing issue, this Court's finding aligns with the majority of other post-*Trans Union* Dunning Letter cases in this district, the Seventh Circuit, and other circuits. *See, e.g., Blaise v. Transworld Sys. Inc.*, 2022 WL 3927746, at \*5 (N.D. Ill. Aug. 30, 2022) (collecting cases from this circuit); *Maldonado v. Credit Control Srvcs., Inc.*, 2022 WL 4465838, at \*3–4 (N.D. Ill. Sept. 26, 2022) (relying on *Hunstein III* and *TransUnion* to find no

standing); *Feist v. Arcadia Recovery Bureau, LLC*, No. 21-2015, 2022 WL 4331583, at *2–3 (E.D. Penn. Sept. 19, 2022) (same); *Mullins v. Monarch Recovery Mgmt., Inc.*, No 21-cv-00120-KDB-DSC, 2022 WL 11141325, at *1–3 (W.D. N.C. Oct. 19, 2022) (same).

Plaintiff may have had a basis to rely upon *Hunstein I* in her initial complaint but, by the time Plaintiff filed her second amended complaint, the Eleventh Circuit had vacated *Hunstein I*, issued and vacated *Hunstein II*, and the rehearing en banc remained pending. Yet, nowhere does Plaintiff acknowledge this fact, let alone explain why this Court should still adopt *Hunstein I*'s reasoning (or the vacated reasoning in *Hunstein II*).

Instead, besides relying on *Hunstein I,* Plaintiff's response offers only two other arguments in support of standing. [24] at 6. First, she cites to *Thomas v. Unifin, Inc.*, another Dunning Letter Case from this district in which the court found Article III standing by analogy to a tort for public disclosure of private facts. *See* 21-cv-3037, 2021 WL 3709184, at *2 (N.D. Ill. Aug. 20, 2021). That opinion, however, relied on *Hunstein I* and was issued before the Eleventh Circuit vacated *Hunstein I*. Thus, *Thomas* provides no basis for the Court to find Article III standing here.

Second, Plaintiff argues that her allegations show injury-in-fact because Defendant disclosed an "almost $6000" debt, which carries greater likelihood of humiliation than if the alleged debt had been "de minimus." [24] at 6. But Plaintiff puts forth a distinction without a difference—while an action for public disclosure of private facts requires proof that "the matter publicized is of a kind" that "would be

11

highly offensive to a reasonable person," it still remains a threshold requirement that the defendant "publicize" the matter. Restatement (Second) of Torts § 652D (1977). As discussed above and in *Hunstein III*, Plaintiff has not and cannot establish that Defendant "publicized" her debt information by sharing it with Dept. 855. Thus, Plaintiff cannot show injury-in-fact, regardless of how sensitive or humiliating she finds the debt information to be.

Plaintiff, as the party invoking this Court's jurisdiction, bears the burden to establish Article III standing for her § 1692c(b) claim. *Apex Digital*, 572 F.3d at 443–44. She has not met her burden. Nor can she, since any alleged privacy harm that she suffered when Defendant shared her debt information with the mailing vendor, Dept. 855 (to the extent she alleged any harm at all) does not bear "a 'close relationship in kind" to a traditional privacy tort. *Gadelhak*, 950 F.3d at 463 (quoting *Spokeo*, 578 U.S. at 341). Accordingly, the Court dismisses without prejudice (but denies leave to amend), Plaintiff's claim pursuant to § 1692c(b) of the FDCPA for lack of Article III standing. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019) ("If, after amendments, the jurisdictional problem persists [lack of Article II standing], then the only option left is a dismissal without prejudice" but "the court has the discretion to deny leave to amend.").

## B. Section 1692e(8) Claim

Plaintiff also claims that Defendant violated § 1692e(8) of the FDCPA by allegedly reporting Plaintiff's debt to a credit agency without marking it as disputed. [22] ¶¶ 30, 40. Section 1692e(8) provides that a debt collector may not communicate

or threaten to communicate "credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). In moving to dismiss, Defendant argues that Plaintiff fails to plausibly allege that Defendant misreported her debt to a credit agency. Thus, it argues, Plaintiff fails to allege a plausible claim and cannot show a concrete injury sufficient to establish standing. [23] at 11–13. This Court agrees.

On a procedural note, Plaintiff asserted this claim in her First Amended Complaint, [15], but conceded in response to a prior motion to dismiss that she could not establish Article III standing. [17] at 4. She revived the claim in her Second Amended Complaint, however, arguing that she has standing pursuant to the Seventh Circuit's recent decision in *Ewing v. MED-1 Sols.,* LLC, 24 F.4th 1146 (7th Cir. 2022). [22] ¶ 35; [24] at 2–5. Defendant disagrees, arguing that *Ewing* does not save Plaintiff's claim, as alleged. [23] at 9–14.

In *Ewing*, the court considered the consolidated appeal of two FDCPA actions against debt-collectors for violating § 1692e(8) by reporting consumers' alleged debts to credit reporting agencies without disclosing the debts as disputed. 24 F.4th at 1152. Relying on the Supreme Court's *TransUnion* decision and by analogy to a defamation tort, the *Ewing* court held that a consumer meets the Article III standing requirement for a § 1692e(8) violation as long as she establishes "publication because an unpublished statement, even if false and defamatory, is not injurious." *Id.* (citing *TransUnion*, 141 S. Ct. at 2209–10). The court also acknowledged *TransUnion*'s comments that dissemination to a printing house likely does not establish

13

"publication." *Id.* On this basis, it held that for dissemination to qualify as "publication," the consumer must also show that the third-party "understood the defamatory significance" of the false information. *Id.* at 1154.

Based upon these requirements, the court concluded that the *Ewing* consumers had met their burden on standing. First, it found that the debt collectors had disseminated the false debt information by sharing it with third-party credit reporting agencies. *Id.* at 1153. Second, it found that the credit reporting agencies "understood the defamatory significance" of the information because: (1) the agencies included it in the consumers' credit reports; and (2) the consumers submitted evidence that the credit reporting agencies consider whether a debt is disputed in assessing a consumer's creditworthiness. *Id.* at 1154.

Here, the Court agrees with Plaintiff that the *Ewing* decision controls the issue of standing for her § 1692e(8) claim. Plaintiff, however, misconstrues *Ewing*'s holding. Namely, she insists that *Ewing* holds that "any allegation of a violation under 15 U.S.C. Section 1692e(8) is enough to give you Standing [*sic*] in Federal Courts under Article III." [24] at 4. Not so. In fact, *Ewing* emphasized that "a statutory violation alone does not make an injury concrete." 24 F.4th at 1153. Instead, as discussed above, *Ewing* held that a plaintiff must establish that: (1) Defendant disseminated the false information to a third-party; and (2) the third-party understood the defamatory nature of the communication.

Plaintiff fails to make either showing. Her complaint includes only one factual allegation to support her § 1692e(8) claim: "Defendant went on to report this debt to

one or more of Plaintiff's credit bureaus without indicating there was a dispute. *See* Exhibit D." [22] ¶ 30. Yet, the Exhibit D upon which she relies—a "Credit Report Data" report from "CIN LEGAL Data Services" dated July 8, 2021—directly contradicts her factual allegation, since it indicates that the debt at issue has a "Status: Open, ACCOUNT IN DISPUTE":

| | | | | |
|---|---|---|---|---|
| **Name:** National Credit System<br>**Type:** Joint Contractual Liability /<br>Applicant<br>**Account:** XXX4292<br>**Status:** Open, ACCOUNT IN<br>DISPUTE<br>**Term:** 1 Month<br>Open, Collection Attorney<br>**Original Creditor:** TREEHOUSE OF<br>SCHAUMBURG II APT | **Current:**<br>$5,742<br>**High Credit:**<br>$5,742 | **Date Opened:**<br>03/2021<br>**Last Reported:**<br>06/27/2021<br>**Last Activity:**<br>01/2021 | **Monthly:**<br>$0<br>**Past Due:**<br>$5,742<br>**Pay History:**<br>9 | National Credit Systems, Inc.<br>Attn: Bankruptcy<br>PO Box 312125<br>Atlanta, GA 31131<br>800-367-1050<br>**Verified:**<br>06/2021 |

Where an exhibit "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citing *Forrest v. Univ. Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Where an exhibit and the complaint conflict, the exhibit typically controls.")).[3]

Given this, Plaintiff has not met her burden under *Ewing* to show dissemination of false information to a third-party. In fact, she also has not even alleged a plausible barebones § 1692e(8) statutory violation. Accordingly, the Court dismisses her § 1692e(8) claim. The Court dismisses this claim without prejudice,

---

[3] Defendant also argues that Exhibit D "is not a consumer report" but merely a "financial report" and Plaintiff fails to plausibly allege that Defendant disseminated Plaintiff's debt information to whomever prepared this "financial report." The Court need not consider this alternative argument, however, since Plaintiff has failed to plausibly allege that Exhibit D even contains inaccurate debt information.

however, because Exhibit D bears a date of July 2021, and Plaintiff alleges that she disputed her debt with Defendant in April 2021. If Plaintiff can, consistent with her Rule 11 obligations, plausibly allege that Defendant falsely reported her debt to a third-party before July 2021 and that the third-party understood "the defamatory nature of the communication," then she may amend her complaint one final time.[4]

## IV.    Conclusion

For the reasons explained above, the Court grants Defendant's motion to dismiss. [22]. Because Plaintiff's response, [24], makes no argument or reference to her claim under 15 U.S.C. § 1692e for alleged "misleading communications to Plaintiff," the Court dismisses this claim without prejudice. It also dismisses without prejudice the § 1692c(b) claim for lack of Article III standing without leave to amend, and dismisses without prejudice the § 1692e(8) claim for lack of Article III standing and failure to allege a plausible claim.

Dated: February 1, 2023

Entered:

John Robert Blakey
United States District Judge

---

[4] In its reply, Defendant asks the Court to award it attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 41(a)(2), arguing that rather than amend her complaint based on *Ewing*, Plaintiff should have filed a supplemental brief on *Ewing* in response to Defendant's prior motion to dismiss. [25] at 13–15. Defendant first raised this request on reply, however, which gave Plaintiff no opportunity to respond. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) (holding that "district courts are entitled to treat an argument raised for the first time in a reply brief as waived."). Further, Rule 41(a)(2) addresses a Plaintiff's voluntary dismissal of an action. Fed. R. Civ. P. 14(a)(2). Plaintiff has not voluntarily dismissed her action, and thus Defendant fails to explain how that rule has any relevance here or permits the Court to award fees and costs. For these reasons and at this point, the Court denies Defendant's request for an award of attorneys' fees and costs.

16